# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE UNIVERSITY OF VERMONT MEDICAL                )
CENTER INC.                                      )
111 Colchester Avenue                            )
Burlington, VT 05401                             )
                                                 )
AKRON GENERAL MEDICAL CENTER                     )
4400 Easton Commons Way, Suite 125               )
Columbus, OH 43219                               )
                                                 )
BOTSFORD GENERAL HOSPITAL                        )
d/b/a Beaumont Hospital – Farmington             )
26935 Northwestern Highway                       )
Southfield, MI 48033                             )
                                                 )
CARILION MEDICAL CENTER                          )
d/b/a Carilion Roanoke Memorial Hospital         )
213 S Jefferson Street, Suite 1600               )
Roanoke, VA 24011                                )
                                                 )
CLEVELAND CLINIC FLORIDA HEALTH                  )        Case No.:  1:19-cv-2763
SYSTEM NONPROFIT CORPORATION                     )
2950 Cleveland Clinic Boulevard                  )
Weston, FL 33331                                 )
                                                 )
CLEVELAND CLINIC HEALTH SYSTEM –                 )
EAST REGION                                      )
d/b/a Hillcrest Hospital                         )
4400 Easton Commons Way                          )
Suite 125                                        )
Columbus, OH 43219                               )
                                                 )
CLEVELAND CLINIC HEALTH SYSTEM –                 )
EAST REGION                                      )
d/b/a South Pointe Hospital                      )
4400 Easton Commons Way                          )
Suite 125                                        )
Columbus, OH 43219                               )
                                                 )
DUKE UNIVERSITY HEALTH SYSTEM, INC.              )
d/b/a Duke Regional Hospital                     )
310 Blackwell Street                             )
4th Floor, Box 104124                            )
Durham, NC 27710                                 )

DUKE UNIVERSITY HEALTH SYSTEM, INC.        )
d/b/a Duke University Hospital        )
310 Blackwell Street        )
4th Floor, Box 104124        )
Durham, NC 27710        )
        )
FAIRVIEW HOSPITAL        )
4400 Easton Commons Way        )
Suite 125        )
Columbus, OH 43219        )
        )
FLORIDA HEALTH SCIENCES CENTER INC        )
d/b/a Tampa General Hospital        )
1 Tampa General Circle        )
Tampa, Florida 33601        )
        )
FROEDTERT MEMORIAL LUTHERAN HOSPITAL,        )
INC.        )
9200 West Wisconsin Avenue        )
Milwaukee, WI 53226        )
        )
GUNDERSEN LUTHERAN MEDICAL CENTER, INC.        )
1910 South Avenue        )
La Crosse, WI 54601        )
        )
MEDICAL UNIVERSITY HOSPITAL AUTHORITY        )
169 Ashley Avenue        )
Charleston, SC 29425        )
        )
MONTEFIORE MEDICAL CENTER        )
111 East 210th Street        )
Bronx, NY 10467        )
        )
OAKWOOD HEALTHCARE, INC.        )
d/b/a Beaumont Hospital – Dearborn        )
26935 Northwestern Highway        )
Southfield, MI 48033        )
        )
OCHSNER CLINIC FOUNDATION        )
d/b/a Ochsner Medical Center        )
1514 Jefferson Highway        )
New Orleans, LA 70121        )
        )

PRISMA HEALTH-UPSTATE                                    )
300 East McBee Avenue                                    )
Suite 400                                                )
Greenville, SC 29601                                     )
                                                         )
RECTOR AND VISITORS OF THE UNIVERSITY                    )
OF VIRGINIA                                              )
d/b/a University of Virginia Medical Center              )
1215 Lee Street                                          )
Charlottesville, VA 22908                                )
                                                         )
SHANDS TEACHING HOSPITAL AND CLINICS, INC.  )
1600 SW Archer Road                                      )
Gainesville, FL 32610                                    )
                                                         )
SSM HEALTH CARE ST. LOUIS                                )
d/b/a SSM Health St. Mary's Hospital - St. Louis         )
10101 Woodfield Lane                                     )
St. Louis, MO 63132                                      )
                                                         )
STATE UNIVERSITY OF IOWA                                 )
d/b/a University of Iowa Hospitals and Clinics           )
200 Hawkins Drive                                        )
Iowa City, IA 52242                                      )
                                                         )
THE CHARLOTTE-MECKLENBURG HOSPITAL                       )
AUTHORITY                                                )
d/b/a Carolinas Medical Center                           )
1000 Blythe Boulevard                                    )
Charlotte, NC 28203                                      )
                                                         )
THE CHARLOTTE-MECKLENBURG HOSPITAL                       )
AUTHORITY                                                )
d/b/a Carolinas Medical Center – Northeast               )
920 Church Street North                                  )
Concord, NC 28025                                        )
                                                         )
THE CHARLOTTE-MECKLENBURG HOSPITAL                       )
AUTHORITY                                                )
d/b/a Carolinas Rehabilitation                           )
1100 Blythe Boulevard                                    )
Charlotte, NC 28203                                      )

THE CLEVELAND CLINIC FOUNDATION          )
4400 Easton Commons Way                   )
Suite 125                                 )
Columbus, OH 43219                        )
                                          )
THE MOUNT SINAI MEDICAL CENTER            )
One Gustave L. Levy Place                 )
New York, NY 10029                        )
                                          )
THE ST. LUKE'S-ROOSEVELT HOSPITAL CENTER  )
d/b/a Mount Sinai St. Luke's              )
One Gustave L. Levy Place                 )
New York, NY 10029                        )
                                          )
THE UNIVERSITY OF KANSAS HOSPITAL         )
AUTHORITY                                 )
4000 Cambridge Street                     )
Kansas City, KS 66160                     )
                                          )
VIRGINIA COMMONWEALTH UNIVERSITY          )
HEALTH SYSTEM AUTHORITY                   )
1601 Willow Lawn Drive                    )
Richmond, VA 23230                        )
                                          )
WILLIAM BEAUMONT HOSPITAL                 )
d/b/a Beaumont Hospital – Royal Oak       )
26935 Northwestern Highway                )
Southfield, MI 48033                      )
                                          )
WILLIAM BEAUMONT HOSPITAL                 )
d/b/a Beaumont Hospital – Troy            )
26935 Northwestern Highway                )
Southfield, MI 48033                      )
                                          )
            Plaintiffs,                   )
                                          )
        v.                                )
                                          )
ALEX M. AZAR II,                          )
Secretary of Health and Human Services,   )
200 Independence Avenue, S.W.             )
Washington, DC 20201,                     )
                                          )
            Defendant.                    )

**COMPLAINT**

## I.    INTRODUCTION AND NATURE OF SUIT

1.    The Medicare statute compensates hospitals for the costs that they incur in treating Medicare beneficiaries.  Many hospitals provide graduate medical training for resident physicians. Their costs of operating these educational programs are part of their overhead costs for providing care to all of their patients, including Medicare beneficiaries.  The Medicare statute thus provides for an annual payment to hospitals to pay Medicare's share of the hospitals' direct graduate medical education, or DGME, costs, subject to a statutory cap on those costs.

2.    Many hospitals train "fellows," that is, physicians who are continuing their medical education beyond the minimum period needed for board certification.  The costs of training fellows, like the costs of training physicians who are beginning their residencies, are part of a hospital's DGME costs.  Congress has provided that the Medicare program will reimburse hospitals for Medicare's share of training fellows, albeit at a reduced rate that reflects the fellows' greater levels of experience.  *See* 42 U.S.C. § 1395ww(h)(4)(C).

3.    The Secretary of Health and Human Services has issued a regulation, 42 C.F.R. § 413.79(c)(2)(iii), that flips the statute on its head.  For hospitals that train fellows and whose DGME programs are operating above the statutory cap, the Secretary's regulation reduces the hospital's reimbursement below the statutory cap.  What is more, the regulation further reduces the hospital's reimbursement for each additional fellow that the hospital trains.  That is, the Secretary has effectively imposed a "fellow penalty."  The fellow penalty regulation has no basis in the statute that the Secretary purports to interpret.  Moreover, the fellow penalty regulation is utterly irrational; there is no conceivable reason to believe that Congress wanted the Secretary to

*penalize* hospitals for training fellows, or to take money away from hospitals for the valuable patient-care services those fellows provide to Medicare beneficiaries.

4.      Each of the Plaintiff Hospitals in this action trains fellows in their graduate medical education programs, and each of those programs operated above the statutory cap for the cost reporting periods at issue here.  Under the Medicare statute, the Plaintiff Hospitals should be reimbursed for their costs in training these fellows.  But under the Secretary's fellow penalty regulation, the Medicare program actually claws payment back from each hospital for each fellow that it trains.  Because the fellow penalty regulation is contrary to the statute, and because it is arbitrary and capricious, the Plaintiff Hospitals bring this action seeking the invalidation of the fellow penalty regulation and a proper calculation of the Medicare reimbursement owed to them for their DGME costs.

## II.      PARTIES

5.      The Plaintiffs in this action are thirty-two (32) hospitals that participate in the Medicare program.  The Plaintiffs in this action are listed below with their Medicare provider numbers and their cost reporting periods at issue in this action, as set forth in their administrative appeals:

(a) The University of Vermont Medical Center Inc., Medicare Provider No. 47-0003, for hospital fiscal years 2014 and 2015;

(b) Akron General Medical Center, Medicare Provider No. 36-0027, for hospital fiscal years 2014 and 2015;

(c) Botsford General Hospital d/b/a Beaumont Hospital – Farmington, Medicare Provider No. 23-0151, for hospital fiscal years 2013 and 2014;

(d) Carilion Medical Center d/b/a Carilion Roanoke Memorial Hospital, Medicare Provider No. 49-0024, for hospital fiscal year 2013;

(e) Cleveland Clinic Florida Health System Nonprofit Corporation, Medicare Provider No. 10-0289, for hospital fiscal years 2014 and 2015;

(f) Cleveland Clinic Health System – East Region, d/b/a Hillcrest Hospital, Medicare Provider No. 36-0230, for hospital fiscal years 2014 and 2015;

(g) Cleveland Clinic Health System – East Region, d/b/a South Pointe Hospital, Medicare Provider No. 36-0144, for hospital fiscal years 2014 and 2015;

(h) Duke University Health System, Inc., d/b/a Duke Regional Hospital, Medicare Provider No. 34-0155, for hospital fiscal year 2014;

(i) Duke University Health System, Inc., d/b/a Duke University Hospital, Medicare Provider No. 34-0030, for hospital fiscal years 2007 and 2014;

(j) Fairview Hospital, Medicare Provider No. 36-0077, for hospital fiscal years 2014 and 2015;

(k) Florida Health Sciences Center Inc, d/b/a Tampa General Hospital, Medicare Provider No. 10-0128, for hospital fiscal years 2007 and 2008;

(l) Froedtert Memorial Lutheran Hospital, Inc., Medicare Provider No. 52-0177, for hospital fiscal years 2014 and 2015;

(m) Gundersen Lutheran Medical Center, Inc., Medicare Provider No. 52-0087, for hospital fiscal years 2011, 2012 and 2015;

(n) Medical University Hospital Authority, Medicare Provider No. 42-0004, for hospital fiscal years 2010 and 2015;

(o) Montefiore Medical Center, Medicare Provider No. 33-0059, for hospital fiscal years 2005, 2006, 2011, 2012, 2013 and 2014;

(p) Oakwood Healthcare, Inc., d/b/a Beaumont Hospital - Dearborn, Medicare Provider No. 23-0020, for hospital fiscal years 2013 and 2014;

(q) Ochsner Clinic Foundation, d/b/a Ochsner Medical Center, Medicare Provider No. 19-0036, for hospital fiscal years 2013, 2014 and 2015;

(r) Prisma Health-Upstate, Medicare Provider No. 42-0078, for hospital fiscal years 2012 and 2013;

(s) Rector and Visitors of The University of Virginia d/b/a University of Virginia Medical Center, Medicare Provider No. 49-0009, for hospital fiscal years 2010, 2011 and 2012;

(t)  Shands Teaching Hospital and Clinics, Inc., Medicare Provider No. 10-0113, for hospital fiscal years 2007 and 2008;

(u)  SSM Health Care St. Louis d/b/a SSM Health St. Mary's Hospital – St. Louis, Medicare Provider No. 26-0091, for hospital fiscal year 2014;

(v)  State University of Iowa, d/b/a University of Iowa Hospitals and Clinics, Medicare Provider No. 16-0058, for hospital fiscal years 2013, 2014 and 2015;

(w) The Charlotte-Mecklenburg Hospital Authority d/b/a Carolinas Medical Center, Medicare Provider No. 34-0113, for hospital fiscal years 2012 and 2013;

(x)  The Charlotte-Mecklenburg Hospital Authority d/b/a Carolinas Medical Center – Northeast, Medicare Provider No. 34-0001, for hospital fiscal year 2013;

(y)  The Charlotte-Mecklenburg Hospital Authority d/b/a Carolinas Rehabilitation, Medicare Provider No. 34-3026, for hospital fiscal year 2013;

(z)  The Cleveland Clinic Foundation, Medicare Provider No. 36-0180, for hospital fiscal years 2014 and 2015;

(aa)  The Mount Sinai Medical Center, Medicare Provider No. 33-0024, for hospital fiscal year 2011;

(bb)  The St. Luke's-Roosevelt Hospital Center d/b/a Mount Sinai St. Luke's, Medicare Provider No. 33-0046, for hospital fiscal years 2007, 2008, 2009, 2010, 2011 and 2012;

(cc)  The University of Kansas Hospital Authority, Medicare Provider No. 17-0040, for hospital fiscal years 2014 and 2015;

(dd)  Virginia Commonwealth University Health System Authority, Medicare Provider No. 49-0032, for hospital fiscal years 2005, 2006, 2011, 2012 and 2013;

(ee)  William Beaumont Hospital d/b/a Beaumont Hospital – Royal Oak, Medicare Provider No. 23-0130, for hospital fiscal years 2013 and 2014; and

(ff) William Beaumont Hospital d/b/a Beaumont Hospital - Troy, Medicare Provider No. 23-0269, for hospital fiscal year 2014.

6.     The Defendant, Alex M. Azar II, is the Secretary of the United States Department of Health and Human Services ("HHS").  He is sued in his official capacity.  HHS is the Federal

agency that administers the Centers for Medicare & Medicaid Services ("CMS").  CMS is the Federal agency to which the Secretary has delegated administrative authority over the Medicare program, which is established under title XVIII of the Social Security Act.  *See* 42 U.S.C. § 301 *et seq.*  References to the Secretary herein are meant to refer to him, his subordinate agencies and officials, and to his official predecessors or successors as the context requires.

### III.     JURISDICTION AND VENUE

7.      This action arises under the Medicare statute, title XVIII of the Social Security Act, 42 U.S.C § 1395 *et seq.*, and the Administrative Procedure Act (APA), 5 U.S.C. §§ 551-559 and 701-706.

8.      Jurisdiction is proper under 42 U.S.C. §§ 1395oo(a)(1)(A)(ii) and 1395oo(f)(1).

9.      Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(1).

### IV.     BACKGROUND

#### A.     The Medicare Statute Provides for Hospitals to Be Reimbursed for the Cost of Training All of Their Residents, Including Fellows.

10.     The Medicare statute recognizes that the "reasonable costs" that hospitals incur in treating Medicare beneficiaries include "direct graduate medical education costs," that is, the "direct" costs of hosting graduate medical training programs for physician residents.  42 U.S.C. § 1395ww(h)(1).

11.     Under Medicare, *all* reimbursable costs must be "related to patient care."  *See, e.g.,* 42 C.F.R. § 413.9 ("All payments to providers of services must be … related to the care of beneficiaries").  DGME payments are no exception.[1]  *See* 54 Fed. Reg. 40,286, 40,302 (Sept. 29,

---

[1]  The Medicare Payment Advisory Commission ("MedPAC") has explained that "Medicare is paying not for training costs but rather for patient care."  Medicare Payment Advisory Commission, *Report to*

1989) ("We are guided by the general principle that, to be allowable at all, the costs must be related to patient care furnished in the hospital, and, to be allowable as a direct GME cost, the costs must be related to the GME program in the hospital"); *see also* Provider Reimbursement Manual § 2100 ("All payments to providers of services must be based on the reasonable cost of services covered under title XVIII of the Act and related to the care of beneficiaries …").   The Secretary has therefore recognized that reimbursement is provided for residents and fellows, at least in part, for the valuable physician services they provide to Medicare beneficiaries:  "[only] services that are *both* related to the care and treatment of the hospital's patients and furnished in support of the training of interns and residents meet the requirements for payment." 54 Fed. Reg. at 40,302.

12.     The statute thus provides that the Medicare program will reimburse a hospital for the portion of the hospital's direct graduate medical education ("DGME") costs that are attributable to its treatment of Medicare beneficiaries.  *Id.*[2]  These costs include the salaries of teaching physicians and stipends paid to resident physicians in approved programs.  *See* S. Rep. No. 404, 89th Cong., 1st Sess. 36 (1965); H.R. No. 213, 89th Cong., 1st Sess. 32 (1965).

13.     The Medicare statute prescribes a formula for computing annual DGME payments to hospitals.  42 U.S.C. § 1395ww(h).  A hospital with an approved graduate medical education

---

*Congress: Rethnking Medicare's Payment Policies for Grduate Medical Education*, at 8 (1999).  This is because residents provide "patient care and other services in conjunction with their training that are of value to the institution where they train, while accepting compensation for the services they provide that is lower than they might otherwise be able to earn given their skill level." *Id.* at 7.  It therefore follows that the "direct GME costs that hospital report on their Medicare cost reports represent the net value of the patient care services residents provide." *Id.*

[2]  Before the implementation of the Medicare prospective payment system in 1983, the costs of resident physician services furnished to Medicare beneficiaries, which are now paid under "GME," were paid on a reasonable cost basis under Medicare Part A.  *See* Social Security Act §§ 1814(b)(1), 1861(v)(1)(A).

program receives a "payment amount" for each cost reporting period that is calculated to be equal to the product of three factors.  42 U.S.C. § 1395ww(h)(3)(A).  The first factor is "the hospital's medicare patient load," which is the fraction of the hospital's inpatient treatment days attributable to Medicare Part A and Part C beneficiaries.  42 U.S.C. § 1395ww(h)(3)(A)(ii), (h)(3)(C), (h)(3)(D).  The second factor is the "hospital's approved FTE resident amount," which is a calculation of the hospital's average cost per resident.  42 U.S.C. § 1395ww(h)(2), (h)(3)(A)(i), (h)(3)(B)(i).  The third factor is "the weighted average number of full-time-equivalent residents … in the hospital's approved medical residency training programs" in the cost reporting period.  42 U.S.C. § 1395ww(h)(3)(A)(i), (h)(3)(B)(ii).  This third factor is also known as the "resident FTE count."  Only this third factor is at issue in this litigation.

14.    As the name suggests, the resident FTE count is intended to represent the total number of residents that a hospital trains in a given cost reporting period.  This number, multiplied by the hospital's average cost per resident and multiplied again by the hospital's Medicare patient load, determines the amount that the Secretary pays to the hospital to cover the Medicare program's share of the costs of the hospital's graduate medical education program.

15.    The Medicare statute does not provide for payment based simply on a raw count of the number of the hospital's full-time-equivalent residents.  Instead, payment is based on the hospital's "weighted average number of full-time-equivalent residents" in its training program.  42 U.S.C. § 1395ww(h)(3)(B)(ii).  The formulas for determining the "weighted" number and the "average" number are set forth in 42 U.S.C. § 1395ww(h)(4).

16.    The FTE count is "weighted" to reflect the likelihood that a hospital incurs greater costs for a resident at the beginning his or her residency than it does for a resident who is nearing

the completion of that education.  The statute thus provides that, "in calculating the number of full-time-equivalent residents in an approved residency program … for a resident who is in the resident's initial residency period … the weighting factor is 1.00."   42 U.S.C. § 1395ww(h)(4)(C)(ii).  (The initial residency period is the minimum number of years of formal training needed to meet the requirements for initial board eligibility in the resident's particular specialty.  42 U.S.C. § 1395ww(h)(5)(F), (G).)

17.     Residents who continue in a hospital's graduate medical education program beyond their initial residency period are commonly referred to as "fellows."  The statute recognizes that a hospital will continue to incur costs in training fellows, albeit at a lower rate than the hospital incurs for more junior residents, and that the Medicare program should pay its fair share of these costs.  The statute thus assigns a reduced (but still positive) weighting factor for fellows:  "in calculating the number of full-time-equivalent residents in an approved residency program … for a resident who is not in the resident's initial residency period … the weighting factor is .50."  42 U.S.C. § 1395ww(h)(4)(C)(iv).  Thus, the actual count of a hospital's full-time equivalent residents who are in their initial residency period (IRP), plus one-half of the actual count of the hospital's full-time equivalent residents who are fellows, equals the "weighted … number of full-time-equivalent residents."  By way of example, a hospital that trained 10 IRP residents and 10 fellows would have a weighted FTE count of 15.

18.     The "average" number of full-time equivalent residents is determined by calculating the average of the hospital's actual count of full-time-equivalent residents for the current cost reporting period and each of the two preceding periods:

> [T]he total number of full-time equivalent residents for determining a hospital's graduate medical education payment shall equal the average of the actual full-time equivalent resident counts for the cost reporting period and the preceding two cost reporting periods.

42 U.S.C. §1395ww(h)(4)(G)(i).   That average, after the application of the weighting factors described above, determines the "weighted average number of full-time-equivalent residents" for which the Medicare program makes payment.   42 U.S.C. § 1395ww(h)(3)(B)(ii).   By way of example, a hospital that trained 10 IRP residents and 10 fellows in its second-to-last cost reporting period, 12 IRP residents and 12 fellows in its last cost reporting period, and 14 IRP residents and 14 fellows in its current cost reporting period would have a weighted average FTE count of 18.

19.     That "weighted average number" is subject to a statutory cap.   Since 1997, the Medicare statute has placed a limit on the number of resident FTEs in the fields of allopathic and osteopathic medicine that a hospital can count in a given year.   This limit, known as the "FTE cap," is set by the number of unweighted FTEs that the hospital reported on its most recent cost reporting period ending on or before December 31, 1996.   In this regard, the statute states:

> [F]or purposes of a cost reporting period beginning on or after October 1, 1997 … the total number of full-time equivalent residents before application of weighting factors (as determined under this paragraph) with respect to a hospital's approved medical residency training program in the fields of allopathic medicine and osteopathic medicine may not exceed the number (or, 130 percent of such number in the case of a hospital located in a rural area) of such full-time equivalent residents for the hospital's most recent cost reporting period ending on or before December 31, 1996.

42 U.S.C. § 1395ww(h)(4)(F)(i).   This paragraph, read together with the provisions defining the calculation of the "weighted average number" of full-time-equivalent residents, sets forth a rule that the Medicare program will reimburse hospitals for the costs of training all of their residents— IRP residents and fellows alike—up to the statutory cap.

**B.     The Secretary's Regulation Penalizes Hospitals for Training Fellows.**

20.     The Secretary has issued a regulation that flips this statutory directive on its head. Rather than providing for reimbursement to hospitals for their costs of training both IRP residents and fellows, and for the valuable services those residents and fellows provide to Medicare beneficiaries, the Secretary has adopted a rule that actually *reduces* the total amount of reimbursement to hospitals for each fellow that the hospital trains.

21.     The statute directs the Secretary to "establish rules … for the computation of the number of full-time-equivalent residents in an approved medical residency training program."  42 U.S.C. § 1395ww(h)(4).  In a purported exercise of this authority, the Secretary has adopted a regulation that addresses situations where the actual number of residents trained by the hospital in the cost reporting year exceeds the hospital's FTE cap.

> If the hospital's number of FTE residents…exceeds [the FTE cap or limit], the hospital's weighted FTE count (before application of the limit) … will be reduced in the same proportion that the number of FTE residents for that cost reporting period exceeds the [FTE cap or limit].

42 C.F.R. § 413.79(c)(2)(iii).

22.     As mentioned above, the statute provides that a hospital's unweighted FTE count is adjusted by weighting factors depending on the status of the residents (in the first example above, 20 FTEs are reduced to 15).  42 U.S.C § 1395ww(h)(4)(C).  The Secretary's regulation unlawfully further reduces a hospital's weighted FTE count in cases in which the hospital trains residents (whether IRPs or fellows) above the FTE cap.  In cases where a hospital has trained residents in excess of the statutory FTE cap, the regulation replaces the statutory formula for determining the "weighted … number" of FTE residents with a new formula that multiplies the statutory weighted

FTE count by a new fraction consisting of the hospital's FTE cap (numerator) and the number of unweighted FTEs the hospital reported in that cost reporting year (denominator).

23.    The Secretary's formula for double weighting the FTE count in 42 C.F.R. § 413.79(c)(2)(iii) has no basis in the text of the statute that it purports to interpret. Moreover, the regulation produces irrational results. If a hospital is training residents in excess of its cap, and some of its residents are fellows, under the regulation each fellow that the hospital reports in excess of its cap will actually *reduce* its DGME reimbursement. That is, the Secretary inexplicably imposes a "fellow penalty."

24.    The following hypothetical demonstrates how the Secretary's regulation imposes the fellow penalty. Hospital A has an FTE cap of 100. In Year 1, Hospital A trains 100 IRP residents and zero fellow residents. Hospital A's unweighted FTE count is 100, and its weighted FTE count is also 100. Since Hospital A is not operating above its cap, it can claim all 100 of its weighted FTEs for reimbursement in the present year.

25.    In Year 2, Hospital A trains 200 IRP residents and zero fellow residents. Hospital A's unweighted FTE count is 200. Because Hospital A's unweighted FTEs are in excess of its cap, it cannot claim its 200 weighted FTEs for reimbursement in the present year. The number of FTEs that Hospital A can claim in Year 2 is limited to its allowable FTE count, as calculated in accordance with in 42 C.F.R. § 413.79(c)(2)(iii). On these facts, the allowable FTEs formula produces a result of 100, which is equal to Hospital A's FTE cap. Hospital A is not subject to the fellow penalty in Year 2 because it is not training any fellows.

26.    In Year 3, Hospital A trains 200 IRPs and 100 fellows. Hospital A's unweighted FTE count is 300, and its weighted FTE count is 250. As was the case in Year 2, Hospital A is

operating above its cap, which means the number of FTEs it can claim in Year 3 is again limited to its allowable FTEs. Hospital A's allowable FTEs in Year 3 under the Secretary's regulation is equal to 250 weighted FTEs x (100 FTE cap / 300 unweighted FTEs), or 83.33. Notably, Hospital A's present-year FTEs are 16.67 lower in Year 3 than they were in Years 1 and 2, when Hospital A trained zero fellows.

27.      Hospital A's FTE count will continue to decrease as it takes on more fellows. In Year 4, Hospital A trains 200 IRP residents and 200 fellow residents. Hospital A's unweighted FTE count is now 400 and its weighted FTE count is 300. Under the Secretary's regulation, Hospital A's allowable FTEs in Year 4 is equal to 300 weighted FTEs x (100 FTE cap / 400 unweighted FTEs), or 75. Hospital A's present-year FTEs are lower in Year 4 than in Years 1 and 2 when Hospital A no fellows, and lower than in Year 3 when Hospital A trained only half as many fellows. The effect of the regulation on Hospital A's Medicare reimbursement for Years 1, 2, 3, and 4 is detailed in the following table:

|  | Cap | IRPs | Fellows | Unweighted FTEs | Weighted FTEs | Allowable FTEs | Reimbursable FTEs |
|---|---|---|---|---|---|---|---|
| Year 1 | 100 | 100 | 0 | 100 | 100 | NA | 100 |
| Year 2 | 100 | 200 | 0 | 200 | 200 | 200 x (100/200) =100 | |
| Year 3 | 100 | 200 | 100 | 300 | 250 | 250 x (100/300) = 83.33 | |
| Year 4 | 100 | 200 | 200 | 400 | 300 | 300 x (100/400) = 75 | |

**C.      The Medicare Statute Provides for Expedited Judicial Review of a Challenge to the Fellow Penalty Regulation.**

28.     Section 1878(a)(1)(A)(i) of the Social Security Act entitles a provider of services under the Medicare program to a hearing before the Provider Reimbursement Review Board ("PRRB") if three prerequisites are met: (i) the provider is dissatisfied with a final determination of the Secretary as to the amount of the payment under the Medicare Act; (ii) the provider files a request for hearing within 180 days of the final determination (typically an NPR); and (iii) the amount in controversy is at least $10,000 for an individual appeal or $50,000 for a group appeal. 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835.  If an appeal satisfies these requirements, the PRRB has jurisdiction to hear the appeal.  *Id.*

29.     Section 1878(a)(1)(B) and (a)(1)(C) of the Social Security Act also grants a provider the right to a Board hearing under the following conditions: (i) the provider has not received a final determination from the MAC on a timely basis after filing its original or amended cost report, (ii) the provider's cost report complied with the applicable rules and regulations, (iii) the provider filed a request for a hearing within 180 days after notice of the contractor's determination would have been received if such determination had been made on a timely basis, and (iv) the amount in controversy is $10,000 or more ($50,000 or more for group appeals).  42 U.S.C.  § 1395oo(a)(1)(B)-(C), (2)-(3).   Under the Board regulations implementing Section 1878(a)(1)(B)-(C), a final determination is deemed untimely if not received, through no fault of the provider, within one year of the date that the provider submitted its last-filed cost report for the period.  42 C.F.R. § 405.1835(c)(1).

30.     When the PRRB has jurisdiction to hear an appeal, but the appeal involves a statute, regulation, or policy that the PRRB is without authority to overturn, the PRRB may, through its own motion or upon request of the provider, grant expedited judicial review ("EJR") of the appeal.

42 U.S.C. § 1395oo(f)(1).  If EJR is granted, the provider can seek judicial review in federal court without first having a hearing before the PRRB.  *Id.*  The provider must file its complaint no later than 60 days after receiving notice of the PRRB's decision to grant EJR.  *Id.*

31.     The Medicare statute allows providers to bring a civil action under the standards of the Administrative Procedure Act (APA) through EJR.  *See* 42 U.S.C. § 1395oo(f)(l).

32.     The APA provides that the "reviewing court shall … hold unlawful and set aside agency action … found to be … (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; … [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]"  5 U.S.C. § 706(2).

## V.     PROCEDURAL HISTORY

33.     Pursuant to the procedures set forth at 42 U.S.C. § 1395oo, the Plaintiff Hospitals have challenged, and are dissatisfied with, the Secretary's treatment of their claims for DGME reimbursement as described in the preceding paragraphs.  The Plaintiff Hospitals filed appeals with the PRRB.  The Plaintiffs' appeals satisfied all jurisdictional requirements for an appeal set forth at 42 U.S.C. § 1395oo(a)-(b).

34.     Each of the Plaintiff Hospitals, with the exception of the Plaintiff Hospitals described in paragraph 35 below, proceeded before the PRRB pursuant to Section 1878(a)(1)(A)(i) of the Social Security Act, 42 U.S.C. §§ 1395oo(a)(1)(A)(i).  These Plaintiff Hospitals satisfied the jurisdictional requirements for a Board appeal under this provision.  Each of these Plaintiff Hospitals (i) received a notice of program reimbursement (NPR) and was dissatisfied with that NPR; (ii) was part of a group appeal in which the aggregate amount in controversy was over

$50,000, and (iii) filed its request for a hearing before the Board within 180 days after receiving its NPR.

35.     The following Plaintiff Hospitals filed appeals with the PRRB under Sections 1878(a)(1)(B) and 1878(a)(1)(C) of the Social Security Act:  Akron General Medical Center (for FYE 12/31/2014), Carilion Medical Center d/b/a Carilion Roanoke Memorial Hospital, Cleveland Clinic Florida Health System Nonprofit Corporation (for FYEs 12/31/2014 and 12/31/2015), Duke University Health System, Inc., d/b/a Duke Regional Hospital, Duke University Health System, Inc., d/b/a Duke University Hospital, Gundersen Lutheran Medical Center, Inc., Medical University Hospital Authority, Montefiore Medical Center, The Charlotte-Mecklenburg Hospital Authority d/b/a Carolinas Medical Center – Northeast, and The St. Luke's-Roosevelt Hospital Center d/b/a Mount Sinai St. Luke's.  These Plaintiff Hospitals, through no fault of their own, did not receive final determinations within one year of submitting their last-filed cost reports for the periods at issue in this litigation.  Each of these Plaintiff Hospitals filed an appeal with the Board within the 180-day window following the one-year anniversary of the date they submitted their cost reports, and each Provider joined a group appeal with an aggregate amount in controversy greater than or equal to $50,000.

36.     On July 23, 2019, the PRRB determined that it had jurisdiction to hear the Plaintiffs' appeals, but that it lacked authority to decide the legal questions at issue in this case. The PRRB granted EJR for the following of Plaintiffs' appeals:

    (a) Beaumont Health 2013 DGME Fellows CIRP Group, PRRB Case No. 18-0338GC;

(b) Beaumont Health 2013 DGME Prior and Penultimate Years Fellows Group, PRRB Case No. 18-0337GC;

(c) Beaumont Health 2014 DGME Fellows Group, PRRB Case No. 18-01058GC;

(d) Beaumont Health 2014 DGME Prior and Penultimate Years Group, PRRB Case No. 18-0168GC;

(e) Cleveland Clinic 2014 DGME Fellows Group, PRRB Case No. 17-1289GC;

(f) Cleveland Clinic 2014 DGME Prior and Penultimate Years Fellows Group, PRRB Case No. 18-0022GC;

(g) K&S 2007-2010 Fellows Group, PRRB Case No. 18-0567G

(h) K&S 2007-2010 DGME Prior and Penultimate Years Fellows Group, PRRB Case No. 18-0705G;

(i) Mount Sinai Health System 2011 DGME Fellows Group, PRRB Case No. 18-0506GC;

(j) Mount Sinai Health System 2011 DGME Prior and Penultimate Years Fellows, PRRB Case No. 18-0502GC;

(k) Cleveland Clinic 2015 DGME Fellows – Present Year CIRP Group, PRRB Case No. 17-1685GC;

(l) K&S 2011-2013 DGME Fellows Group, PRRB Case No. 18-0224G;

(m) K&S 2011-2013 DGME Fellows Prior and Penultimate Years Group, PRRB Case No. 18-0225G;

(n) Duke 2014 DGME Fellows CIRP Group, PRRB Case No. 18-0837GC;

(o) Duke 2014 DGME Fellows Prior and Penultimate Years CIRP Group, PRRB Case No. 18-0838GC;

(p) Cleveland Clinic Fnd. CY 2015 DGME Fellows – Prior & Penultimate Years Group, PRRB Case No. 19-1770GC;

(q) King & Spalding CY 2012 DGME Fellow Penalty Prior and Penultimate Years (II), PRRB Case No. 19-1901G;

(r) King & Spalding CY 2012 DGME Fellow Penalty Present Year Group, PRRB Case No. 19-1902G;

(s) King & Spalding CY 2011 DGME Fellow Penalty Prior and Penultimate Years (II) Group, PRRB Case No. 19-1903G;

(t) King & Spalding CY 2011 DGME Fellow Penalty Present Year (II) Group, PRRB Case No. 19-1904G;

(u) K&S 2015 DGME Fellows Group, PRRB Case No. 18-0226G;

(v) K&S 2015 DGME Fellows Prior and Penultimate Years Group, PRRB Case No. 18-0227G;

(w) K & S 2014 DGME Fellows Group, PRRB Case No. 18-0246G;

(x) K & S 2014 DGME Fellows Prior and Penultimate Years Group, PRRB Case No. 18-0247G;

(y) Carolinas HealthCare System 2013 DGME Fellows CIRP Group, PRRB Case No. 18-0806GC;

(z) Carolinas HealthCare System 2013 DGME Fellows Prior and Penultimate Years, PRRB Case No. 18-0807GC;

(aa)   King & Spalding CY 2013 DGME Fellow Penalty Present Year (II) Group, PRRB Case No. 19-1535G;

(bb)   King & Spalding CY 2013 DGME Fellow Penalty Prior and Penultimate Years (II), PRRB Case No. 19-1536G;

(cc)   King & Spalding CY 2015 DGME Fellow Penalty Present Year (II) Group, PRRB Case No. 19-1948G; and

(dd)   King & Spalding CY 2015 DGME Fellow Penalty Prior and Penultimate Years (II), PRRB Case No. 19-1949G.

37.   The Plaintiff Hospitals now file this civil action within 60 days of the date on which they received notification of the PRRB's EJR decision.

38.   All of the Plaintiff Hospitals have trained both IRP residents and fellows, and their total number of residents that they trained in the cost reporting periods at issue in this case exceeded their respective FTE caps.  Each of the Plaintiff Hospitals is therefore subject to the fellow penalty under the Secretary's regulation.  Because the Secretary exceeded his statutory authority, and acted arbitrarily and capriciously, in imposing the fellow penalty on them, the Plaintiff Hospitals bring this suit seeking the invalidation of the Secretary's regulation and a proper calculation of the DGME reimbursement that is owed to them.

## COUNT I

### Violation of the Medicare Statute and the Administrative Procedure Act: Agency Action Not in Accordance with Law

39.   The allegations set forth in paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

40.     The APA, as incorporated into the Medicare statute, permits judicial review of agency actions, findings, and conclusions that are "not in accordance with law" or are "in excess of statutory jurisdiction, authority, or limitations."  5 U.S.C. §§ 706(2)(A), 706(2)(C).

41.     The Secretary's fellow penalty regulation is unlawful because it violates the plain meaning of the statute governing GME payments, 42 U.S.C. § 1395ww(h).  That statute sets forth in precise terms the calculation of the "weighted average number of full-time-equivalent residents" and the statutory cap that applies to this calculation.  The Secretary's regulation unlawfully substitutes the statute with a new formula that imposes a different, lower cap that has no basis in the statutory text.

42.     The Secretary's fellow penalty regulation is unlawful because it unreasonably interprets Section 1395ww(h).  Under the fellow penalty regulation, a hospital that is subject to the FTE cap will *lose* reimbursement for each additional fellow that it trains.  Congress plainly intended, in enacting the GME reimbursement statute, that the Medicare program would pay its fair share for the training both of IRP residents and of fellows, and for the valuable patient-care services that both residents and fellows provide.  Yet the Secretary's regulation, unreasonably, converts the statute into a provision that penalizes hospitals for training fellows, and that takes reimbursement *away* from hospitals in exchange for the valuable patient-care services those fellows provide to Medicare beneficiaries.

43.     The Secretary's fellow penalty regulation further violates the Medicare statute's prohibition on cross-subsidization of Medicare beneficiaries.  The Medicare statute guarantees that the costs of delivering covered services to Medicare beneficiaries "will not be borne by individuals not so covered."  42 U.S.C. § 1395x(v)(1)(A).  Because the fellow penalty regulation not only

denies reimbursement to hospitals for their costs in training fellows, but actually takes payment away from hospitals for each fellow that they train, the regulation forces the cost of patient care provided by fellows to Medicare beneficiaries to be borne by third parties.

## COUNT II

### Violation of the Medicare Statute and the Administrative Procedure Act: Arbitrary and Capricious Agency Action

44.     The allegations set forth in paragraphs 1 through 43 are incorporated by reference as if fully set forth herein.

45.     The APA, as incorporated into the Medicare statute, permits judicial review of agency actions, findings, and conclusions that are "arbitrary, capricious," or "an abuse of discretion."  5 U.S.C. § 706(2)(A).

46.     The Secretary's fellow penalty regulation is arbitrary and capricious because it imposes a formula for the calculation of GME reimbursement that has no basis in the statutory text, and because his formula irrationally penalizes hospitals for training fellows.  Under the fellow penalty regulation, each hospital that is subject to the FTE cap will lose reimbursement for each additional fellow that it trains.  Congress could not have intended to penalize hospitals simply for training more residents than they may claim for DGME reimbursement.  There is no public policy purpose that can explain why Congress would want to impose such a penalty.  Taking reimbursement away from hospitals for each fellow trained above its cap is especially irrational, given that the Secretary has acknowledged that residents and fellows provide valuable patient-care services to Medicare beneficiaries.  *See, e.g.,* 54 Fed. Reg. at 40,302.  There is, therefore, no possible rationale for a rule where the more patient-care services the hospital provides through its fellows, the more money is taken away from the hospital.

47.     The irrationality of the Secretary's "fellow penalty" policy is underscored by the fact that the Secretary would reimburse a hospital for the same services performed by a fellow under different circumstances, such as if the fellow was in an unapproved program or "moonlighting." *See* 42 C.F.R. § 415.202 (providing payments based on a percentage of reasonable costs for "services of a resident who is not in any approved GME program"); 42 C.F.R. § 415.208(b)(3) (providing reimbursement for the services of a moonlighting resident or fellow under the physician fee-schedule since "the services of the moonlighting physician are considered to have been furnished by the individual in his or her capacity as a physician, rather than in the capacity of a resident").

48.     The Secretary's policy of penalizing hospitals for training residents while operating above their FTE caps is arbitrary and capricious in several additional respects.  First, the Secretary has failed to articulate a satisfactory explanation for his action.  In the rulemaking adopting the fellow penalty regulation, the Secretary did not provide any explanation for why his chosen formula was necessary to implement the FTE cap.  62 Fed. Reg. 45,966, 46,005 (Aug. 29, 1997). Nor did the Secretary explain why it is appropriate or consistent with the statute to penalize hospitals for training fellows while operating above their FTE caps.  *Id.*

49.     Second, the Secretary's failure to explain his reasoning indicates that he entirely failed to consider an important aspect of the problem, namely, the extent to which his chosen formula for calculating allowable FTEs would penalize hospitals that train fellows and operate over their FTE caps.

50.     Third, the Secretary failed to consider significant and viable and obvious alternatives that were available to him.  One obvious and viable alternative would be to follow the

language of the statute and to pay hospitals for the "weighted average number" of their full-time-equivalent residents, up to the statutory cap.  This formula is dictated by the statute, or at the very least, is not foreclosed by the statute.  This formula also serves Congress's obvious intent to reimburse, not to penalize, hospitals for training fellows who provide care to Medicare beneficiaries.  Yet the Secretary failed to consider this obvious alternative when he adopted the fellow penalty regulation.

51.     Fourth, in adopting the fellow penalty regulation, the Secretary relied on factors that Congress did not intend him to consider in calculating hospital DGME payments.  In particular, Congress has not authorized the Secretary, in determining a hospital's DGME payment, to consider whether and to what extent a hospital is training fellows while operating in excess of its FTE cap.  Yet the fellow penalty regulation does just that.

## VI.     RELIEF REQUESTED

52.     The Plaintiff Hospitals request an Order:

(a) Declaring invalid and enjoining the Secretary from applying the fellow penalty regulation, 42 C.F.R. § 413.79(c)(2)(iii), for purposes of calculating their DGME reimbursement for the cost reporting periods at issue in this litigation;

(b) Directing the Secretary to calculate the Plaintiff Hospitals' DGME reimbursement in a manner consistent with that Order, and to make prompt payment of any additional amounts due the Plaintiff Hospitals plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2);

(c) Requiring the Secretary to pay legal fees and cost of suit incurred by the Plaintiff Hospitals; and

(d) Providing such other relief as the Court may consider appropriate.

Respectfully submitted,

/s/ Mark D. Polston
Mark D. Polston, D.C. Bar No. 431233
Daniel J. Hettich, D.C. Bar No. 975262
Joel McElvain, D.C. Bar No. 448431
Alek Pivec, D.C. Bar No. 1046247 (*pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, D.C.  20006
(202) 626-5540 (phone)
(202) 626-3737 (fax)
MPolston@kslaw.com

*Attorneys for Plaintiffs*

Date:  September 16, 2019